[No. F016306. Fifth Dist. Oct. 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
VELMA LEE KEETON, Defendant and Appellant.

## COUNSEL

Howard J. Berman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Edgar A. Kerry and Robert P. Whitlock, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE (W. A.), Acting P. J.**—Velma Lee Keeton limits her appeal to two issues, both concerning the trial court's imposition of the middle term of four years for an enhancement for being personally armed with a firearm (Pen. Code,[1] § 12022, subd. (c)) during the commission of the offense of transporting methamphetamine.

### THE FACTS

In the course of conducting searches on October 29, 1990, of Keeton's pickup truck, a duffel bag she was carrying in her truck, and her residence, police discovered 208.26 grams of a substance containing methamphetamine, narcotics packaging materials, a list with the names of persons known to the police to be narcotics dealers, "pay and owe" records, and many other items frequently associated with narcotics dealing and use. Inside the duffel bag police found a .25-caliber semiautomatic handgun with one round of ammunition in the chamber and five rounds in the magazine. A conservative estimate of the value of the substance containing methamphetamine was $20,800.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

The searches started when an officer stopped Keeton in her truck. She asked to proceed a short distance to a convenience store so she could use the restroom. When she began to walk toward the store carrying her duffel bag, the officer observed suspicious material protruding from the bag. The officer ordered her to stop and searched the bag.

A jury convicted Keeton of transporting methamphetamine, possession of methamphetamine for the purpose of sale, and three misdemeanor counts. In connection with the felony counts, the jury found Keeton to have been personally armed with a firearm as defined in section 12022, subdivision (c) and section 12022, subdivision (a)(1).

## THE SENTENCING HEARING

At sentencing, the court acknowledged having read and considered a report of the probation officer, a statement in mitigation submitted by Keeton's counsel, and an opposing declaration submitted by one of the narcotics investigators involved in Keeton's case. The statement in mitigation emphasized the 47-year-old Keeton's lack of a prior criminal record, the offense was not a crime of violence, Keeton was "remorseful," gainfully employed and her work as an informant (postarrest) led to an arrest. The declaration in opposition stated Keeton's assistance following her arrest proved to be of little or no use to law enforcement.

The reporting probation officer cited one factor in mitigation—Keeton's lack of a prior criminal record (Cal. Rules of Court,[2] rule 423(b)(1))—and two factors in aggravation—the circumstances surrounding the offense indicate planning or sophistication (rule 421(a)(8)) and the crime involved a large quantity of contraband (rule 421(a)(10)). In addition, the report noted Keeton's age and several health problems.

Pertinent to the sentencing issues raised here, the probation officer recommended imposition of the middle term (three years) on the conviction for transportation of methamphetamine and imposition of the middle term (four years) on the enhancement for being personally armed with a firearm in the commission of that offense (§ 12022, subd. (c)). The prosecutor agreed with the recommendation.

The court denied probation (§ 1203.073, subd. (b)(2)) and recounted as factors in mitigation Keeton's lack of a prior record in light of her age and her work as a postarrest informant. The court found as factors in aggravation "that the planning, sophistication of the crime was indicated by her possession of [a] firearm, a pager, and police scanners . . . . Secondly, the crime

---

[2]All further rule references are to the California Rules of Court.

involved a large amount of contraband, over 200 grams, and that is a circumstance in aggravation. But it's also the same circumstance that we use for enhancement allegation here."

The court found the circumstances in mitigation outweighed the circumstances in aggravation and imposed the "low term" of two years for transportation of methamphetamine. Without elaboration, the court imposed the four-year (middle) term on the arming enhancement. Pursuant to section 654, the court stayed the one-year arming enhancement found true pursuant to section 12022, subdivision (a)(1). The court imposed but stayed sentence on the remaining convictions and weapon enhancement allegations. Keeton's total fixed term was six years.

DISCUSSION

I

*Imposition of the Enhancement Term as an "Enhancement Choice"*
*Requiring a Statement of Reasons*

■ As we have noted, the trial court did not state reasons for imposing the four-year middle term for Keeton's having been personally armed with a firearm within the meaning of section 12022, subdivision (c). Keeton contends this failure to state reasons requires resentencing. We disagree.

Section 12022, subdivision (c) provides a person who is personally armed with a firearm in the commission or attempted commission of specified drug offenses shall "be punished by an additional term of imprisonment in the state prison for three, four, or five years in the court's discretion. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence." Keeton argues, in essence, that selection of any of the three enhancement terms, including the middle term, is an enhancement choice requiring a statement of reasons.

The term "enhancement choice" entered the arena of sentencing jargon in legislation enacted in 1988 and 1989 that, inter alia, amended numerous Penal Code enhancement provisions relating primarily to firearms. (Stats. 1988, ch. 1249, § 2, pp. 4160-4161; Stats. 1989, ch. 1167, §§ 1-5, pp. 4526-4530.)[3] In each instance, the Legislature superseded an existing

---

[3]Following the 1989 legislation, the amended enhancement provisions were sections 12022, subdivision (c) (personally armed with a firearm during commission/attempted commission of specified drug crimes); 12022.2 (immediate possession of metal/armor penetrating ammuni-

mandatory, singular, enhancement term with an upper, middle and lower base term. With the exception of section 12022.5, each provision contains the identical language[4] at issue in this case: "The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence."

"Enhancement choice" has not been defined by statute or court rule. Nor does it appear to have any precise historical antecedent. Further, the legislative history of the pertinent statutes does not particularly enlighten us. However, a review of the history of the Determinate Sentence Law (DSL), including statutes, sentencing rules and judicial interpretation, does shed some light. This history indicates "enhancement choice" derived from the term "sentence choice," which has been a basic concept of the DSL since its 1977 inception. Section 1170, the central provision of the DSL, provides in part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. . . . The court shall set forth on the record the facts and reasons for imposing the upper or lower term." (§ 1170, subd. (b).) "The court shall state the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c).)

Pursuant to section 1170.3 and constitutional authority, the Judicial Council adopted "Sentencing Rules for the Superior Courts." (Rule 401.) Rule 405 (Definitions) provides: " 'Sentence choice' means the selection of any disposition of the case which does not amount to a dismissal, acquittal, or grant of a new trial." (Rule 405(f).) A literal reading of rule 405 suggests a sentence choice occurs whenever a court chooses between sentence options. But case law has defined "sentence choice" somewhat more narrowly.

"The general rule [requiring a statement of reasons for sentence choice], however, does not apply where the statute directs that a certain sentence be imposed absent circumstances justifying an alternate disposition. In such cases, the court has no choice but to follow the legislative mandate." (*People v. Langevin* (1984) 155 Cal.App.3d 520, 523 [202 Cal.Rptr. 234].) "Where the Legislature establishes a sentencing norm and requires the court explicitly to justify a departure therefrom, and the court sentences in conformity

tion, while armed with firearm, in commission/attempted commission of felony); 12022.3 (use of or armed with a firearm or any other deadly weapon in commission of specified sex crimes); 12022.4 (furnishing/offer to furnish firearm, during commission/attempted commission of felony); and 12022.5 (personal use of firearm during commission/attempted commission of felony).

[4] The language of section 12022.5, subdivisions (a) and (c), varies slightly from but is identical in content to the other cited provisions.

with the legislative standard, all that is required on the appellate record is a showing that the court was aware of its discretion to select an alternate disposition. [Citation.]" (*Id.* at p. 524.)

In *People v. Langevin, supra,* 155 Cal.App.3d 520, the court held reasons need not be stated for denying probation in cases in which "Penal Code section 1203, subdivision (e)(2), expressly proscribes a grant of probation unless unusual circumstances militate otherwise." (*Id.* at p. 523.) "Since the court did not so find, the presumption of the statute remained unrebutted. Thus there was no occasion for the court to state what was self-evident, that mitigating factors favoring probation were perforce rejected and the court was bound to comply with the mandate of the statute." (*Ibid.*)

In *People v. Dixie* (1979) 98 Cal.App.3d 852 [159 Cal.Rptr. 717], the court held reasons need not be stated for imposing a section 12022.5 firearm use enhancement. "A 'sentence choice' . . . relates to discretionary choices and does not cover mandatory enhancements. Since the applicability of this section to the present case is evident, and the punishment is mandated, it is not a 'sentence choice' requiring comment on the record. [Citation.] Only when a sentencing court strikes the enhancement does that action become a sentence choice requiring a statement of reasons on the record. (Pen. Code, § 1170.1, subd. (g).)" (98 Cal.App.3d at p. 857.)

In light of the Legislature's evident awareness of section 1170 and its judicial interpretation (*People v. Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288]), and the obvious parallels between section 1170, subdivision (b) and section 12022, subdivision (c), two things are clear. First, in enacting the latter section, the Legislature directed that a certain sentence—the middle term—be imposed absent circumstances in aggravation or mitigation justifying an alternate disposition. Second, in referring to "enhancement choice," the Legislature meant a departure from the presumed middle term, the norm, the term mandated "unless there are circumstances in aggravation or mitigation." Simply stated, enhancement choice means selection of the upper or lower enhancement term. Choice of a mandated middle term is not an enhancement choice requiring a statement of reasons.

Keeton relies upon the semantic difference between section 1170, subdivision (b) ("[t]he court shall set forth on the record the facts and reasons for imposing the upper or lower term") and section 12022, subdivision (c) ("[t]he court shall state the reasons for its enhancement choice on the record . . ."). In essence, Keeton argues section 12022, subdivision (c), should be read to require a statement of reasons for the mandated middle term because,

unlike section 1170, subdivision (b), the statute does not exclude such a requirement by negative implication. In other words, she draws a negative inference from the absence of a negative inference.

It is equally likely, however, that the Legislature, aware of judicial interpretation of the concept "sentence choice," simply chose to express the statement of reasons requirement more concisely, substituting "enhancement choice" for "upper or lower term" in section 12022, subdivision (c). Keeton has advanced no plausible reason for why the Legislature, in amending section 12022, subdivision (c), would have intended to require reasons to be stated for imposing the mandated, presumptive, middle enhancement term. And we cannot conceive of a reason why the Legislature, having exempted from a statement of reasons requirement such mandated terms as middle base prison terms (*People* v. *Arceo* (1979) 95 Cal.App.3d 117, 121 [157 Cal.Rptr. 10], disagreed with on another point in *People* v. *Villanueva* (1991) 230 Cal.App.3d 1157, 1160-1161 [281 Cal.Rptr. 688]), mandatory consecutive sentences (*People* v. *Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1553 [258 Cal.Rptr. 75]) and enhancements (*People* v. *Dixie, supra,* 98 Cal.App.3d at p. 857), would have singled out this particular mandated term for disparate treatment.

To borrow from the language of *People* v. *Langevin, supra,* 155 Cal.App.3d at page 523, where there are no aggravating or mitigating circumstances sufficient to justify departure from the norm, there is no reason for a sentencing judge to state what is self-evident.

The trial court did not err when it failed to state reasons for imposing the middle enhancement term.

## II

*Imposition of the Middle Enhancement Term Following Imposition of the Mitigated Term for the Substantive Crime*

■ Before imposing the middle enhancement term under section 12022, subdivision (c), the trial court imposed the lower base term for the substantive crime of transporting methamphetamine. Keeton reasons the same mitigating factors causing the trial court to impose the lower base term on the transportation count necessarily mandated its choice of the lower enhancement term. We disagree for two reasons.

First, the record shows that, in weighing mitigating against aggravating factors bearing on the choice of base term, the court did *not* cite as a separate

aggravating factor that Keeton was personally armed when she transported the methamphetamine. The court stated:

"In aggravation we find that the planning, sophistication of the crime was indicated by her possession of firearm, a pager, and police scanners indicates some degree of sophistication here."

The reference to Keeton's possession of a firearm was a reference to the planning and degree of sophistication involved in the crime (rule 421(a)(8) ["The manner in which the crime was carried out indicates planning, sophistication, or professionalism."]) and does not appear to have been an invocation of rule 421(a)(2) ("The defendant was armed with or used a weapon at the time of the commission of the crime."). However, in deciding upon an enhancement term, the court was *required* to—and presumably did—consider circumstances relating to the personally armed factor. In other words, the court's imposition of the lower base term and the middle enhancement term can be explained by its having weighed different aggravating factors.

Rule 428, which became effective January 1, 1991, provides criteria for imposing enhancements. Rule 428(b), dealing with choice from among three possible enhancement terms, states:

"When the defendant is subject to an enhancement that was charged and found true for which three possible terms are specified by statute, the middle term shall be imposed unless there are circumstances in aggravation or mitigation or unless, under statutory discretion, the judge strikes the additional term for the enhancement.

"The upper term may be imposed for an enhancement only when there are circumstances in aggravation that relate directly to the fact giving rise to the enhancement. The lower term may be imposed based upon any of the circumstances in mitigation enumerated in these rules or, under rule 408, any other reasonable circumstances in mitigation that are present."

Circumstances directly relating to the arming in Keeton's case included: (1) though not on her person, the gun was available to Keeton in the cab of her truck; (2) the gun was loaded; and (3) a round was chambered. In addition, Keeton chose to carry the weapon with her in the duffel bag as she departed for the restroom, leaving open the question of what, if anything, she planned to do with it upon her return. The court reasonably could find these facts at least mandated the middle enhancement term, notwithstanding the already cited mitigating facts.

Second, in deciding upon an enhancement term, the court reasonably could have determined the mitigating factors justifying the lower base term

did not compel further leniency, especially when weighed against the circumstances relating to the personal arming enhancement. We know of no authority precluding a court from making a dual *mitigation* use of the same factors (cf., § 1170, subd. (b) [court may not base upper term on fact of enhancement]). Likewise, we know of no authority requiring the court to give the same facts the same weight and effect in two different exercises of discretion.

The court did not err when it imposed the middle enhancement term on Keeton after it had imposed the lower base term on the substantive crime.

DISPOSITION

Judgment affirmed.

Harris, J., and Brown (G. A.), J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.